So we have our two habeas appeals. We're going to start with the Batson appeal where Ms. Carroll will be representing the petitioner and Ms. Germanowicz is going to be participating by Zoom. Ms. Carroll. Hold on one moment, Ms. Carroll. Good morning, and may it please the Court, Mary Charlotte Carroll for Appellant Teresa Batson. My name is Mary Charlotte Carroll for Appellant Teresa Batson, and I'm going to be representing Ms. Germanowicz, and I'm going to be representing Ms. Germanowicz, and I'm going to be representing Ms. Germanowicz, and I'm going to be representing Ms. Germanowicz, and I'm going to be representing is the judgment from which the statute of limitations runs. Section 2244 D1 establishes a one-year period for a person in custody pursuant to the judgment of a state court to file a petition, and subsection D1A specifies that the limitations period runs from the date on which the judgment became final. Yeah, the problem it seems to me here is Osborne is a pretty important precedent. It tells us that if it is, if the state court designated it as a non-proton judgment, we have to defer to its designation. That's a determination that is made under state law. And when the sentences were actually entered after the judgment, it is very clear that if you look to the sentences, that is what authorizes the confinement. You can read the language, and it is marked non-proton. The petitioner could challenge that on appeal under state law, could argue that is an improper non-proton designation, and it should be vacated, at least as to non-proton, but that didn't happen. So we have what the record reflects is a sentence that authorizes the confinement that is marked non-proton and then relates back. And if that is so, under Osborne, it seems to me the petition is untimely. So let me address the record first. The circuit court did not enter Ms. Batson's 2017 amended judgment non-proton. The only thing the amended judgment does when you read it, though, is that it vacates one count. There is no language in that amended judgment authorizing confinement. So the first part of the amended judgment, which is at page 140 of the joint appendix, had a place where the district court could choose to designate it non-proton. But there is no reason to do that because the only thing that judgment is doing is vacating that one count. You began your argument, I think, correctly by focusing on the judgment that authorizes the confinement, okay? Show me in that amended judgment the language that authorizes your client's confinement. So you're correct that the language that authorizes the confinement, Ms. Batson's confinement, is at page 158, which is part of the sentencing forms that the clerk prepared. That are marked non-proton. That's correct. However, the order directing the clerk to prepare those sentencing forms, which stated that they should be entered in compliance with that order, was not designated non-proton and it was dated the date that it was entered, May 29, 2018. But that's a great state law issue to appeal. But under Osborne, and frankly, we don't need Osborne because this rule, this principle of law is established. Aren't we stuck with state law determinations of state law? In other words, it isn't for this court as the federal habeas court to review a state law decision made under state law. We take it as a given. And here, the given is that the sentence, for better or for worse, rightly or wrongly, is marked non-proton, right? So I think at best the record is unclear on whether the judge intended to mark it non-proton. That's not the intent, counsel. The intent of the judge is not what we're evaluating. I think Chief Judge Pryor said it and you said it before. It is the judgment authorizing the confinement. And that's what we look to and that is clear, is it not? That is exactly right. You look to that judgment. And I would point the court to... No, the judgment authorizing the confinement. Yes. Not the document marked judgment, but that which authorizes the confinement, which here is the sentence. As you know, or you may not know, in Florida, there is, it's called a judgment and sentence. The judgment is the actual conviction part and the sentence is that which authorizes the confinement. And here there is a document, a judgment that lays out the counts for which Ms. Batson was convicted. And then there are sentences dealing with each of those individual counts. And that document states that you are hereby sentenced to this and you are authorized or I commend you to the Department of Corrections to serve your sentence for this long and under these conditions, right? And under Federal law, judgment is composed of a conviction and a sentence. And those two things together form the single judgment that AEDPA refers to. As to Osborne, footnote 4 of that case explains that the court is reserving the question of whether an order that is entered non-proton can have retroactive effect under Florida law because the petitioner in that case for the reason they were counsel footnote 4 does not say that what footnote 4 says is reserves the issue because it's not for us to decide. It is a matter of state law. What's interesting to me is in your brief, and I know you brief both the case after this one and this one, at times you acknowledge and embrace the principle that decisions of state law matter for state law. And by the way, that, I think, inerts to your benefit for the next case we'll be arguing. But for this case, the opposite has to be true as well. In other words, if the state court determined, for better or for worse, rightly or wrongly, that the sentence is to be served non-proton, why aren't we stuck with that? And isn't that exactly what footnote 4 says? And even without footnote 4, that would be our law from pickney on back for how long, for how we deal with state law issues decided by state courts. So I think if you assume that the order was entered non-proton, there is still the second order question of whether it can have retroactive effect under Florida law. The state court did not address that issue at all, and it was decided in the first instance by the district court. That's just a clever argument to try to get us around whether it was a proper non-proton designation or not. There's no question what the effect of non-proton is. It's now for then. That's what it means. It means, and the order is very specific as to what date it's non-proton. There's no doubt what the effect is. The effect is that from that date, from that original date, that's what non-proton means. Your argument really is, well, this isn't a proper non-proton order, but that's an issue of state law that could have been challenged in state court. This issue didn't arise in state court because Ms. Batson did not understand that her order was entered non-proton. She believes and we believe that the record does not reflect that. This first came up before the district court in response to its limited order. It clearly was marked it. I mean, if that was an erroneous marking, it could have been the subject of an appeal, right? The non-proton designation appears on only one page of the judgment and that is the sentencing form. The very document that authorizes the confinement. But I think that that document has to be viewed in conjunction with the court's order vacating and reissuing her sentences on counts 2, 3, and 4, and in conjunction with the court's order vacating her sentence and her conviction on count 1, which was entered in violation of her constitutional rights. That's a great argument under state law for a variance between the judge's intent and what was reflected. But that's not an — but as you pointed out, what judgment — what ADEEPA means is the judgment and sentence authorizing the confinement, which is the only document with which we are authorized to look at to decide the statute of limitations issue. And so it's not the order entering the 3800 order or 3800 decision. It's not the order on post-conviction motion. It's not the order directing the clerk what to do. It is the actual judgment that is signed by the judge authorizing the confinement. And that document is clear as day with regard to Ms. Batson, is it not? I think that the designation of one page of the judgment non-protonque, which conflicts with the court not entering the amended judgment non-protonque on page 140 and 142 of the J.A., is not a clear record. However, the court doesn't need to engage with that question because the issue is one of whether it would have retroactive effect under Florida law, which this court can address. As a matter of Florida law, though, a non-protonque designation does do that. So I would point the court to cases like Diem and Gilliam, which are in our briefing. In those cases, there was no dispute that a state court had entered an order non-protonque and the court assessed whether that order could properly have retroactive effect and indicated that it only could if it corrected a clerical error or a clerical error. But what the court was holding was that that was not a proper non-protonque designation, right? Right. In other words, someone appealed it directly to a court and the court decided that wasn't the right designation. In other words, it didn't really mean that. That's why I say this is a clever argument where you're trying to get us to revisit what Osborne says we can't. I would also say that the question of whether a judgment is a new judgment under AEDPA cannot turn on state law. I would point the court also to the Krangel case from the Sixth Circuit, which involved a non-protonque order and the court held that no matter the label, a judgment changing the substance of a petitioner's conviction or sentence is a new judgment or resets the statute of limitations. Okay. Thank you, Ms. Carroll. You've saved four minutes for rebuttal. We'll hear now from Ms. Germanowicz. Ms. Germanowicz? We can't hear you. Well, you're muted. Sorry, I was having a little problem with the mute button. Okay. Okay. Good. May it please the court, my name is Janine Germanowicz. I'm here today to represent the Florida Department of Corrections and this matter. Of course, it's our position that the district court did not err in dismissing this petition as untimely. I'd like to address my colleague's discussion during the preliminary opening statement, which is that the non-protonque issue was not something that was relevant. I should begin by saying that I absolutely agree that this is a matter of state law. It is interesting to see that if you go back to the hearing at which the court and defense counsel in the states discussed the matter of vacating the conviction and sentence for count one, defense counsel specifically said that there's no reason to have a new resentencing hearing because the vacation of count one did not affect the judgment sentence for count two, three, and four at all. And if you go back and look at the order, the amended judgment, it specifically says that it's being amended to vacate count one. So what that's telling you is that it's leaving in place the conviction and sentence for count two, three, and four. It's not touching those at all. So basically, the amendment is only deleting count one. So then you have the fact that the amended sentences came later. And these amended sentences are specifically trying to delete any reference to count one. And that's all they're doing. Again, count two, three, and four, the conviction and sentences are remaining in place. So basically, this is the clerical corruption that we have here that they're doing, removing all reference to count one. Mr. Manowitz, do you agree with me that the judgment that counts is the judgment that authorizes the confinement? And in this case, it's the sentence, and that that was entered non-proton. And if so, Osborne dictates that this is an untimely petition. Basically, I agree with you completely. The fact of the matter is that what you have in Florida is you have a package, which is the judgment in Florida, which is different from the judgment for federal purposes. But in Florida, you have the judgment, which is essentially the conviction. And it's the combination of the conviction and the sentences that authorizes the defendant's detainment. And in this particular case, the sentences were all marked repeatedly, non-proton, now And it's very, very clear under state law that because they did that, the judge's intent is clear. All of the convictions and sentences related back, all of these amendments related back to the original document in 2010. And therefore, the petition is untimely. Okay. I think we understand the argument. I don't really know that there's anything else we need to know, Mr. Manowitz, unless you understand the questions that we've asked today. Right? Is there anything that you understand we've asked that hasn't been addressed? I would like to address the fact that there's absolutely no change in the convictions and sentences. So regardless of the non-proton issue, what we have here is a judgment and a sentence that was amended. But it was amended only to delete the reference to count one. It wouldn't count two, three, or four. It never vacated. There was never change in any way, shape, or form. So we would argue that regardless of the non-proton designation, there was no change in the sentence and there was never any new judgment in this case. And so is that a reason why the district court's determination that this petition was untimely was correct? And we should affirm. And we should affirm. Absolutely.  Well, unless you have something else, I think that's all we need to know. If you have no further questions, then we will wrap that up, please. And again, I urge the court to affirm. Thank you very much. Thank you. Ms. Carroll, you've saved some time for rebuttal. Thank you, Your Honor. Turning back to Osborne and Footnote 4 of that case, the footnote says that under these circumstances, the court would not opine on the non-proton designation and its correctness. And those circumstances are— But we said because that was a matter of State law. I think both reasons are applicable. The petitioner had not briefed it, so— I don't know what happened there, but what we said is we're not going to opine on it because of State law. That's a matter of State law. We had accepted it as non-proton, and that's it. And we're just not going to get into State law. And let me be clear. I want to read. I think Judge Hall is exactly right. Here's what it says. It says, under these circumstances, because he didn't raise it, and meaning alternatively, because the propriety of labeling a Florida judgment non-proton is a matter of State law, we do not opine as to whether the imposition of the amended sentence in this case was the proper or correct use of non-proton designation. That is a matter best left to the province of the State court. I just — I'm having trouble seeing how that doesn't dictate the result here, which I know doesn't help Ms. Batson, but may, in fact, help your — your next client. Well, it's not hers. I'm sorry. Oh, well, sorry. Right. We're not asking the Court to second-guess how the State court applied State law, because not every part of the judgment says non-proton. The question is whether it can have retroactive effect. And I think under State law, it's clear that it cannot, because it makes a substantive change. I would point the Court also to this Court's decision in Dahl, which we cite in the  And there, you know, the Court explained such orders. We do it — sorry, I apologize. What do we do with the part of Osborne? This is right after the footnote in the main text. In other words, because the correction to the sentence was imposed non-proton, because of the designation, under Florida law, the 2014 amended sentence related back to the date of the initial judgment and was not a new sentence for purposes of Section 2244C State law decision. I mean, isn't that itself us saying that where there's a non-proton designation, as a matter of Florida law, it relates back to the sentence? Why would we not apply the exact same rule here? Well, I think that the Court is obligated, as your Honors referenced earlier, to follow the decisions of the State's highest courts when applying Florida law. Now you're asking us to determine State law. That's — let me be clear. In diversity cases, you're 100 percent right. We're bound as a matter of there. But in the ADIPA context, we're bound by this determination in this case. And in this case, the State courts have made, for better or for worse, for right or for wrong, a decision. And so where that's the case, I just — it seems to me that we're worse bound by Osborne and stuck with that designation. So I think two responses. The first is that in the Dahl case, this Court explained that non-proton orders can't be used to correct substantive errors of law. And so that is a statement from this Court that seems to conflict with Osborne's position in which there was a substantive correction. I would also say that the case in Osborne is distinguishable because there was no real custodial change to the sentence because the Court there removed a mandatory minimum that Osborne had already served. So it was not necessarily a change in his custody. It was sort of a moot point, which the opinion acknowledged. I think this Court should follow the logic of the Sixth Circuit in Kringle, which evaluated an order that was entered non-proton under State law and said, no matter the label, a judgment changing the substance of a petitioner's conviction resets the statute of limitations because the term judgment is a term of art under Federal law that can't be determined by reference to State law. Thank you. Thank you. We'll go to the next case.